UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :

       - v. -                                   :          S4 11 Cr. 32 (JSR)

MARK ANTHONY LONGORIA,             :

       Defendant.                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S SUBMISSION
# PURSUANT TO SECTION 5K1.1 OF THE GUIDELINES

                                            PREET BHARARA
                                            United States Attorney for the
                                            Southern District of New York
                                            Attorney for the United States
                                                of America.

ANTONIA M. APPS
Assistant United States Attorney

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 24, 2013

BY HAND AND REQUEST TO BE FILED UNDER SEAL

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    United States v. Mark Anthony Longoria,
                 S4 11 Cr. 32 (JSR)

Dear Judge Rakoff:

      The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that Mark Anthony Longoria ("Longoria") has rendered in the investigation and prosecution of others. In light of these facts, and assuming that the defendant continues to comply with the terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled on July 1, 2013, the Government intends to move, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1(a) of the Guidelines.

## I. Background

### A. Longoria's Personal Background

      Longoria is a 47-year old married father of five with a Bachelor of Science degree from the University of Southern Illinois. He worked in a series of sales jobs at technology companies between graduating from college in 1991 until shortly before his arrest in 2010. In pertinent part, Longoria worked as a sales manager at Western Digital ("WD"), a manufacturer of hard drives, between 2000 and January 2006, and worked for Advanced Micro Devices ("AMD"), an manufacturer of microprocessor chips, between September 2006 and December 2010. At AMD, Longoria was a production manager, with access to internal sales reports for all of AMD's products.

### B. Longoria's Criminal Conduct

      Longoria began consulting for the expert networking firm Primary Global Research ("PGR") in or around 2006, after he had already been let go from WD as part of a downsizing

The Honorable Jed S. Rakoff
June 24, 2013
Page 2

effort.[1] Longoria signed a Consultant Agreement with PGR, which prohibited disclosure of "any non-public, confidential or proprietary information" belonging to any previous or current employers. During consulting calls with PGR clients in the six months he was between jobs in 2006, Longoria provided unit numbers and average selling prices for WD's supply of hard drives to WD's largest customer, Dell, some of which Longoria obtained from a friend who still worked at WD. After Longoria joined AMD, he began to provide AMD's confidential information to clients and employees of PGR.

As a consultant, Longoria spoke with PGR clients hundreds of times between 2006 and March 2010, when he was fired from PGR. PGR paid him between $250 and $300 per call with PGR clients (depending on the time period), for a total of approximately $170,000. As of the end of 2009, Longoria was PGR's most frequently used consultant by PGR clients.[2]

Longoria knew that PGR's clients were hedge fund analysts and portfolio managers who wanted AMD's confidential information for purposes of trading in securities. Longoria provided the actual and forecast sales numbers for all of AMDs product lines, and in two quarters in 2009, he obtained the top level revenue and gross margin numbers that were to be reported on AMD's quarterly earnings reports to be released to the public.[3] Longoria obtained these top-line earnings numbers from a friend in AMD's finance department (whom he referred to in his calls with the hedge fund clients as his "buddy in finance"). Longoria paid his friend approximately $300 in total for the information. Longoria sought out the earnings numbers in 2009 in part because he felt pressured by a PGR client to obtain the information.

At least one of the hedge fund clients who regularly obtained AMD's confidential information from Longoria, Barai Capital Management, executed securities transaction in AMD based in whole or in part on the information, earning approximately $1.9 million in illicit gains.

Longoria took the PGR client calls in a conference room away from his desk and used his personal cell phone to make the calls in order to avoid detection. He knew that passing AMD's confidential information violated AMD's compliance policies (which he signed) and violated his fiduciary duties to AMD. Additionally, as Longoria stated at his plea hearing, he knew that his conduct harmed AMD, whose confidential information he was stealing.

---

[1] Longoria testified at the trial of James Fleishman that he was recruited by Fleishman to join PGR. However, Longoria was clearly mistaken as to the identity of the PGR employee who recruited him, as Fleishman did not begin working for PGR until after Longoria started doing consulting calls for PGR.

[2] The second most highly used consultant, Alnoor Ebrahim, who worked at AT&T, was sentenced to one year and one day by the Honorable J. Paul Oetken. See U.S. v. Alnoor Ebrahim, 12 Cr. 471 (JPO). Mr. Ebrahim was not a cooperating witness.

[3] In one of the quarters that Longoria obtained this Inside Information, he mistakenly reported the wrong gross margin number to some of the hedge fund clients.

The Honorable Jed S. Rakoff
June 24, 2013
Page 3

Longoria also entered in a separate financial arrangement with one of PGR's hedge fund clients to receive $1,000 a month for a ten-month period in 2008 and 2009. Additionally, after Longoria's calls with PGR dropped off in late 2009, he began consulting through other expert networking firms. He earned a total of $11,368 in 2009 and 2010 from these other consulting firms.

At the beginning of Longoria's cooperation with the Government – prior to signing his cooperation agreement and entering his guilty plea – Longoria made a number of false statements to the FBI and/or the United States Attorney's Office ("USAO"). In pertinent part, Longoria minimized his own conduct and the criminal conduct of the hedge fund client who paid him $10,000 for inside information in 2008 and 2009; he initially failed to disclose the fact that he paid his friend in AMD's finance department for earnings numbers; and he initially falsely accused another individual within AMD of providing specific earnings numbers in 2009. However, after initially making these false statements, which formed the factual predicate for a false statements charge at his plea, Longoria subsequently corrected them and fully admitted his criminal conduct (including the false statements), and the conduct of others, to the Government.

C. Guilty Plea

On June 30, 2011, Longoria pled guilty before Your Honor to a four-count Information pursuant to a cooperation agreement. Count One charged Longoria with conspiracy to commit securities fraud and wire fraud, in violation of Title 18, United States Code, Section 371, in connection with Longoria's passing of material, nonpublic information ("Inside Information") belonging to AMD to PGR clients and employees between 2007 and 2010. Count Two charged Longoria with wire fraud, in violation of Title 18, United States Code, Section 1343, in connection with Longoria's passing of WD's confidential business information to PGR clients and employees in 2006. Count Three charged Longoria with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section Two, in connection with providing Inside Information concerning AMD to Jason Pflaum of Barai Capital in 2008, which then formed the basis of trades by Barai Capital. Count Four charged Longoria with making false statements to the FBI and USAO between October 2010 and January 2011, in violation of Title 18, United States Code, Section 1001. The total maximum sentence of incarceration on all counts in the Information is 50 years' imprisonment.

D. Guidelines Calculation

Longoria's sentencing Guidelines range is calculated as follows:

1. Pursuant to U.S.S.G. § 2B1.4(b), which is the applicable guideline for insider trading, the base offense level is 8.[4]

---

[4] Counts One and Three are grouped pursuant to U.S.S.G. § 3D1.2(b) because they involved the same victim and two or more acts or transactions constituting part of a common scheme or plan. Count Four is grouped with Counts One and Three pursuant to U.S.S.G. § 3D1.2(c) because it

2. Pursuant to U.S.S.G. § 2B1.1(b)(1), the base offense level is increased by the "gain resulting from the offense" from the table in § 2B1.1(b)(1). The applicable "gain" is "the total increase in value realized through trading in securities by the defendant and persons acting in concert with the defendant or to whom the defendant provided inside information . . . ." U.S.S.G. § 2B1.4 cmt. Accordingly, based Barai Capital's securities transactions in AMD which were based in whole or in part on Longoria's information, the base offense level is increased by 16 levels pursuant to § 2B1.1(b)(1)(I) (for gain between $1 million and $2.5 million.

3. Pursuant to U.S.S.G. § 3C1.1 and §3D1.2(c), App. N. 5, because Longoria willfully obstructed the Government's investment, his offense level is increased by 2 levels.

4. Pursuant to U.S.S.G. § 3E1.1, because Longoria timely accepted responsibility for his crimes, his offense level is decreased by 3 levels.

Longoria's total offense level is 23. Because Longoria has no criminal history, and is therefore in Criminal History Category I, his sentencing Guidelines Range is 46 to 57 months' imprisonment.

## II. Longoria's Cooperation

Longoria has provided substantial assistance to the Government in three meaningful ways. First, Longoria assisted in the prosecution of James Fleishman, providing important testimony at Fleishman's trial. Second, Longoria was listed as a potential witness (although he was not ultimately called to testify) in the trial of two hedge fund portfolio managers whose analysts obtained information from Longoria and passed it to their portfolio managers for purposes of trading on the information, and he may be called to testify in a related trial scheduled to commence in November. Third, Longoria has provided information with respect to a number of the Government's other insider trading investigations.

Moreover, while Longoria made certain false statements during the early stages of his cooperation, he made numerous truthful and incriminating statements even during the early period of his cooperation (some of which predated his arrest). Further, Longoria subsequently admitted to his criminal conduct, including the fact that he initially lied to the Government, and after the initial period in which he made false statements, Longoria provided truthful and

---

embodies conduct (obstruction of justice) that is treated as a specific offense characteristic in the guideline applicable to Counts One and Three. Count Two, because it involved a different victim, is not grouped with Counts One, Three, an Four, but because its Guidelines level is more than nine levels less serious than the Group with the highest offense level (that is, the Group containing Counts One, Three and Four), it is disregarded for purposes of determining the combined offense level pursuant to U.S.S.G. § 3D1.4(c).

The Honorable Jed S. Rakoff
June 24, 2013
Page 5

significant information to the Government about his conduct and the conduct of others, which was corroborated by other evidence. Additionally, Longoria provided information to the Government about which the Government was previously unaware, and he voluntarily provided various incriminating documents to the Government, including tax documents showing payments to a PGR hedge fund client who made a side deal with Longoria for Inside Information. In other words, the false statements Longoria made during the initial stages of his cooperation, which persisted for only a few months, should not overshadow the significance of Longoria's contributions to the Government's investigations and prosecutions.

    1.    <u>James Fleishman</u>

Longoria testified that he participated in telephone calls with James Fleishman (and other PGR employees) while Longoria was a consultant for PGR. *See United States v. James Fleishman*, 11 Cr. 32 (JSR) (Trial Tr. 1376). When he spoke to PGR employees, including Fleishman, Longoria testified that he provided the same information that he provided to PGR clients, namely, AMD's confidential financial information. Tr. 1377. Longoria recalled five or six calls with Fleishman. Tr. 1379. Further, when Longoria's call volume declined in late 2009, Longoria called Fleishman for an explanation of why that might have happened. Tr. 1382-83. Additionally, after the Galleon arrests in late 2009, Longoria called Fleishman to allay his fears that he might be caught for having disclosed Inside Information to PGR clients. The call, which was captured on a court-authorized wire intercept, was a crucial piece of evidence against James Fleishman. Longoria's testimony provided important context to the call.

To be sure, Longoria was not the only cooperating witness to testify against Fleishman, but he provided direct evidence of Fleishman's knowledge that PGR consultants were providing their employers' confidential information to PGR's clients, in violation of their consulting agreements with PGR and their fiduciary duties to their employers. Fleishman's central defense in the case was that he was not on calls with PGR clients and therefore was not aware that they were providing confidential information to PGR clients. Accordingly, Longoria's testimony (along with that of another PGR consultant who spoke to Fleishman directly, Dan DeVore) provided important evidence against Fleishman. Fleishman was convicted on all counts after a three week trial, and was sentenced to 30 months' imprisonment.

    2.    <u>Todd Newman and Anthony Chiasson</u>

Longoria had regular telephone calls with research analysts at the hedge funds Diamondback Capital and Level Global Investors in 2008 and 2009. These analysts, in turn, provided Longoria's information to their bosses, a portfolio manager at Diamondback (Todd Newman) and a co-founder of Level Global (Anthony Chiasson), as well as friends at other hedge funds. Based in large part on Tortora's and Adondakis's cooperation, the Government brought charges against Newman and Chiasson, as well as two other analysts who received Inside Information from Tortora and Adonadkis (and who subsequently pled guilty). Because Longoria's AMD information was passed to Newman and Chiasson, Longoria was listed as a potential witness in the Newman and Chiasson trial. However, in part due to stipulations the parties reached, Longoria was not called to testify at the trial. Additionally, Longoria will likely

The Honorable Jed S. Rakoff
June 24, 2013
Page 6

be included in the Government's witness list in the related trial of *United States* v. *Michael Steinberg*, S4 12 Cr. 121 (RJS), scheduled to commence in November 2013.

        3.      Ongoing Investigations

Longoria has provided information that has been helpful to various investigations by the USAO and the Securities and Exchange Commission. In particular, Longoria has provided incriminating information against a number of hedge fund professionals who received Longoria's Inside Information while he was acting as a consultant for PGR. ████████████████████████████████████████████████████████████ To date, these individuals have not been charged, but for reasons entirely unrelated to Longoria's efforts and assistance.

## III.    Conclusion

As described above, Longoria provided substantial assistance in connection with the prosecution of James Fleishman, including testifying at his trial, and a number of other insider trading investigations. With the exception of the false statements to the Government during the early stages of his cooperation, to which Longoria pled guilty, the Government believes that Longoria's statements to the Government and his testimony in the case of *United States* v. *James Fleishman* were truthful, as they were corroborated by other evidence. In addition, Longoria has provided important information with respect to a number of other investigations by the Government.

In light of these facts, and assuming that the defendant continues to comply with the terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled, the Government intends to request at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1 of the Guidelines.

                                            Respectfully submitted,

                                            PREET BHARARA
                                            United States Attorney

               By: _/s/ Antonia M. Apps_
                          Antonia M. Apps
                          Assistant United States Attorney
                          (212) 637-2198

cc:      Jonathan Marks, Esq. (By e-mail)